## UNITED STATES

v.

## Lieutenant Colonel Thomas H. ERNEST, 533–40–3011 FV, United States Air Force.

### ACM 27421.

U.S. Air Force Court of Military Review.

Sentence Adjudged 2 Sept. 1988.

Decided 1 Feb. 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Kathryn I. Taylor, Major Terry M. Petrie and Captain David G. Nix.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

SPILLMAN, Judge:

The appellant is a retirement-eligible reserve officer who stands convicted by general court-martial, military judge alone, of five drug related offenses. He was sentenced to dismissal, confinement for five years and total forfeitures. On appeal, as he did at trial, the appellant asserts that the court-martial lacked personal jurisdiction over him. He also asserts that the adjudged sentence is inappropriately severe.

Appellant's criminal misconduct occurred on three separate active duty training tours in early 1988: 20 and 21 January, 11 and 12 February, and 18 and 19 February. His primary jurisdictional assertion is that he was brought onto active duty in violation of Air Force directives on 18 February 1988 and "that any "continuation" of his active duty status was null and void." We disagree.

The military judge made detailed findings of fact in support of his conclusion that appellant was subject to military jurisdiction. R.C.M. 905(c)(1) and (2)(B). As to the first period of active duty, the military judge found that the appellant submitted an APPLICATION FOR ACTIVE DUTY TRAINING, AF Form 1289, dated 13 January 1988, requesting to perform duty on 20 and 21 January 1988. This application was approved in accordance with squadron policy and procedures by authorized appointees, and the accused was ordered to active duty on 20 and 21 January 1988 by verbal order of the unit commander. An AF Form 938, REQUEST AND AUTHORIZATION FOR ACTIVE DUTY TRAINING/ACTIVE DUTY TOUR, (Reserve Order No. 3498), confirming appellant's active duty status on 20 and 21 January, was properly authenticated and published on 25 January 1988. Appellant applied for and received military pay, reserve points and per diem pay for active duty performed on 20 and 21 January.

As to the second period in question, the appellant submitted an AF Form 1289, dated 3 February 1988, requesting to perform active duty on 11 and 12 February. It was processed in accordance with unit procedures, and the appellant was ordered to active duty on the requested dates by a properly authenticated and published reserve order (AF Form 938) dated 10 February. Again the appellant applied for and received military pay, reserve points and per diem pay for active duty performed on 11 and 12 February 1988.

By AF Form 1289, dated 15 February 1988, the appellant requested to perform active duty on 18 and 19 February. This application was processed in accordance with unit procedures, and the appellant was ordered to active duty on the requested dates by verbal order of the commander. A properly authenticated and published reserve order, AF Form 938, dated 18 February 1988, confirmed appellant's active duty status for the dates requested. The appellant was entitled to military pay, reserve points and per diem pay for active duty performed on 18 and 19 February 1988; however, he voluntarily elected to forego applying for these entitlements. Between February and the time of trial, September 1988, the appellant remained on active duty, regularly requested and received per diem payment advances but never applied for or received active duty reimbursement.

The military judge further found that the appellant was in an active duty status on 20 and 21 January, 11 and 12 February and 18 and 19 February 1988; that he was present for duty and in uniform on 18 February when he was apprehended in his duty section; and that he had been in a continuous active duty status from the time of his apprehension to the date of trial. These findings by the military judge will not be disturbed since they are adequately supported by the evidence of record. *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985), *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A. 1981). Based on these findings, the military judge concluded that the appellant was subject to military jurisdiction. We agree.

From the evidence presented at trial, there is no question that appellant's unit failed to follow Air Force directives in bringing him onto active duty on these three occasions.* Due to a shortage of administrative personnel, squadron policy regarding applications for active duty training or tours by reservists was to short cut regulatory procedures for completion of the "COMMAND APPROVAL" section of the AF Form 1289. As a result, blocks covering approval/disapproval, reporting and departing times, training or school status and travel reimbursement were not completed. Additionally, the unit routinely brought reservists onto active duty status with verbal orders of the commander which were later confirmed by written orders (AF Form 938), a practice discouraged by appli-

---

* Air Force Regulation 35–41, Chapter 6, Assignments Within The Reserve Components, Chapter 6. (Apr 1985); AFR 10–7, Administrative Orders, para. 1–15 (Sep 86); *see generally* Air Force Reserve Regulation 50–4 (Apr 85) regarding a commander's authority to delegate manday approval authority for reservists.

cable directives. Notwithstanding these regulatory deficiencies, squadron procedures ensured that dates and times of active duty service were clearly defined either verbally or from the AF Form 1289, specified duties were approved prior to active duty being performed and disapprovals of tour requests were transmitted telephonically when necessary. Military pay, per diem and travel pay, as well as reserve credit for active duty tours, were confirmed in the reserve orders covering each period of active duty service. In short, reserve personnel knew when and where to report for active duty tours, and they received appropriate credit under the reserve system.

In *United States v. Russo*, 1 M.J. 134, 135 (C.M.A.1975), the Court of Military Appeals held that a recruiter's violation of a regulation, which was designed in part to protect the rights of individuals who did not meet specified minimum enlistment standards, precluded the Government from establishing jurisdiction on a constructive enlistment theory. Thereafter the Army Court of Military Review held that deviations from regulations designed to benefit the Government agency in transacting its business, where such regulations were not intended to confer important rights upon individuals, had no effect on the exercise of personal jurisdiction unless substantial prejudice could be shown. *See United States v. Perl*, 2 M.J. 1269 (A.C.M.R.1976); aff'd 8 M.J. 24 (C.M.A.1979) and the cases cited therein. As a result, personal jurisdiction based on military status, or a constructive enlistment theory, was upheld under certain circumstances. In the case *sub judice*, the regulations in question were clearly intended to provide administrative processing guidelines for unit personnel and were *not* designed or intended to confer basic rights upon individuals. We also note that appellant made no assertion of prejudice to his substantial rights based on deviations from the governing regulations; in fact, he did not question jurisdiction until the Article 32, UCMJ, investigation was completed. Our review of the record of trial convinces us that no such prejudice exists.

In 1979 Congress amended Article 2, UCMJ, 10 U.S.C. § 802, and overruled *Russo* by adding subsection (c) which, in effect, made constructive enlistment a viable basis for establishing personal jurisdiction based on status. *United States v. Hirsch*, 26 M.J. 800 (A.C.M.R.1988); *United States v. Quintal*, 10 M.J. 532 (A.C.M.R. 1980), aff'd 15 M.J. 278 (C.M.A.1983). Article 2(c) provides that, notwithstanding any other provision of law, personal jurisdiction by a military service exists if an individual: (1) submitted voluntarily to military authority; (2) met mental competence and age qualifications; (3) received military pay or allowances; and (4) performed military duties. We find this provision dispositive of the *in personam* jurisdiction issue. Clearly this appellant voluntarily submitted to military authority, met qualifications, received military pay or allowances (or was eligible to receive military pay for 18 and 19 February 1988) and performed military duties while on active duty. Furthermore, appellant failed to challenge or question the exercise of jurisdiction over him, other than by refusing to apply for military pay for 18 and 19 February, until after completion of the Article 32 investigation. The plain language of Article 2(c) leads us to conclude that the military services have personal jurisdiction over individuals, including reserve personnel, who meet the subsection (c) criteria, regardless of any regulatory violations which might occur during the process of bringing such personnel onto active duty. Additionally, the failure of an accused to question or challenge military control and authority prior to the commission of an offense is strong evidence of voluntary active duty service.

As was previously noted, the appellant was apprehended in his duty section on 18 February 1988. At that time he was in uniform and was performing military duties in an active duty status. R.C.M. 202(c)(1) and (2) provide that court-martial jurisdiction attaches over a servicemember on active duty "when action with a view to trial of that person is taken," and apprehension is an action by which court-martial jurisdiction attaches. Once jurisdiction at-

taches over a servicemember on active duty, such jurisdiction "continues throughout the trial and appellate process, and for purposes of punishment." *See* R.C.M. 202(c)(1), Discussion. We, therefore, find that court-martial jurisdiction attached over appellant on 18 February 1988 and continued throughout trial and the appellate process.

 Regarding the appellant's assertion that his sentence is inappropriately severe, we are mindful that appellant will not lose his vested retirement benefits despite this conviction and his dismissal from the Air Force, 10 U.S.C.A. Sec. 1331, (a) and (e); Air Force Pamphlet 110–4, *Fiscal Law*, para. 20–4 (30 Sep 88); Air Force Pamphlet 110–3 *Civil Law*, para. 9–3a and b (11 Dec 1987). We also considered his lengthy service, the impact his sentence to confinement must be having on his civilian business and personal finances and his possible emotional instability at the time of the offenses. However, as noted earlier, this senior commissioned officer stands convicted of five drug related offenses. He distributed 24 codeine tablets to an enlisted subordinate in his unit, accepted $50.00 from that same subordinate in return for a promise to distribute cocaine to her at a later date, possessed about 1.4 grams of marijuana, introduced about 1.4 grams of cocaine onto McChord Air Force Base and distributed that cocaine on base to the same enlisted subordinate that day. Additionally, the appellant used the mails in an effort to distribute the cocaine which was 90 to 95 percent pure. While he may not have been a profiteer, he demonstrated a total lack of concern for his responsibilities as an officer. Under these circumstances, we are satisfied that the adjudged sentence is both appropriate and just. *United States v. Healy*, 26 M.J. 394 (C.M.A.1988).

 We resolve the remaining assigned errors and invited issue adversely to the appellant. Appellant's assertion that his unit's vice commander lacked the authority, in the absence of the unit commander, to continue appellant on active duty has no basis in fact or law. Colonel Whaley, the vice commander, was appointed on a G-series order which authorized him to act on behalf of the commander in the latter's absence. *United States v. Jette*, 25 M.J. 16 (C.M.A.1987). *See also* Air Force Regulation 35–54, *Rank, Precedence, and Command*, paras. 10 and 18 (Sep 1981), Interim Message Change 85–1 (Jun 85), which were in effect at the time of the offenses. Appellant was never involuntarily recalled to active duty, therefore, approval by the Secretary of the Air Force was not required to authorize confinement as a form of punishment. Article 2(c) and (d), UCMJ. No violation of the Jencks Act, 18 U.S.C. § 3500, occurred. R.C.M. 914(a) and (f).

The approved findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judge PRATT, concur.