UNITED STATES, Appellee,

v.

Thomas H. ERNEST, Lieutenant
Colonel, U.S. Air Force,
Appellant.

No. 64,341.
ACM 27421.

U.S. Court of Military Appeals.

Argued Dec. 19, 1990.

Decided March 20, 1991.

For Appellant: *Captain Ronald A. Gregory* (argued); *Major Ronald G. Morgan* (on brief); *Colonel Richard F. O'Hair.*

For Appellee: *Major Brenda J. Hollis* (argued); *Captain David G. Nix* (on brief); *Major Paul H. Blackwell, Jr.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

During August and September 1988, appellant was tried by a general court-martial composed of a military judge sitting alone at McChord Air Force Base, Washington. Contrary to his pleas, he was found guilty of possessing marijuana, introducing cocaine onto a military installation, and distributing cocaine and codeine tablets on various days in January and February 1988, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Also, contrary to his pleas, he was found guilty of accepting money from an enlisted member for a promise to distribute cocaine, in violation of Article 133, UCMJ, 10 USC § 933. Appellant, a reserve officer, was sentenced to dismissal, 5 years' confinement, and total forfeitures. The convening authority approved the adjudged sentence on December 19, 1988. The Court of Military Review affirmed the findings of guilty and the sentence on February 1, 1990 (30 MJ 506).

This Court granted review on the following two questions of law:

## I

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY FINDING THAT THE VICE COMMANDER OF APPELLANT'S UNIT HAD AUTHORITY TO CONTINUE APPELLANT ON ACTIVE DUTY FOR UCMJ PURPOSES.

## II

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY FINDING THAT PERSONAL JURISDICTION OVER THE APPELLANT ATTACHED ON 18 FEBRUARY 1988 AND CONTINUED THROUGHOUT THE COURT–MARTIAL PROCESS.

We hold that appellant's court-martial had jurisdiction over him by authority of either Article 2(a)(1) or 2(c), UCMJ, 10 USC § 802(a)(1) or (c). *See United States v. Jette*, 25 MJ 16 (CMA 1987); *United States v. Barraza*, 5 MJ 230, 235 (CMA 1978). *See generally United States v. Cline*, 29 MJ 83 (CMA 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 842, 107 L.Ed.2d 837 (1990).

The military judge in this case made the following findings concerning appellant's pretrial motion to dismiss the charges for lack of jurisdiction over his person:

MJ: With regard to the defense's motion to dismiss all specifications and charges because of a lack of in personam jurisdiction, I find that:

1. The accused is a Lieutenant Colonel in the United States Air Force Reserve pursuant to a Ready Reserve Service Agreement, signed 24 October 1986.

2. The accused is a member of the 40th Aeromedical Evacuation Squadron, Air Force Reserve, McChord Air Force Base, Washington.

3. The accused submitted an Application for Active Duty Training on AF Form 1289, dated 13 January 1988, requesting to perform duty on 20 and 21 January 1988.

4. That application was approved in accordance with squadron policy and procedures by persons to whom approval authority had been properly delegated by the Squadron Commander, and the accused was ordered to active duty on 20—21 January 1988 by verbal order of the Commander.

5. Reserve Order No. D–3498, dated 25 January 1988, was properly authenticated and published, and confirmed the accused's active duty status on 20—21 January 1988.

6. The accused applied for and received military pay, points and per diem pay for active duty performed pursuant to Reserve Order No. D–3498, dated 25 January 1988.

7. The accused was in an active duty status on 20—21 January 1988.

8. The accused submitted an Application for Active Duty Training on AF Form 1289, dated 3 February 1988, requesting to perform duty on 11 and 12 February 1988.

9. That application was approved in accordance with squadron policy and procedures by persons to whom approval authority had been properly delegated by the Squadron Commander, and the accused was ordered to active duty on 11 and 12 February 1988.

10. Reserve Order No. D–4081, dated 10 February 1988, was properly authenticated and published, and confirmed the accused's active duty status on 11 to 12 February 1988.

11. The accused applied for and received military pay, points and per diem pay for active duty performed pursuant to Reserve Order No. D–4081, dated 10 February 1988.

12. The accused was in an active duty status on 11 to 12 February 1988.

13. The accused submitted an Application for Active Duty Training on AF Form 1289, dated 15 February 1988, requesting to perform duty on 18 and 19 February 1988.

14. That application was approved in accordance with squadron policy and procedures by persons to whom approval authority had been properly del-

egated by the Squadron Commander, and the accused was ordered to active duty on 18—19 February 1988 by verbal order of the Commander.

15. *Reserve Order No. D–4345, dated 18 February 1988, was properly authenticated and published, and confirmed the accused's active duty status on 18—19 February 1988.* The accused was to remain in place for Inactive Duty for Training on 20 and 21 February 1988.

16. The accused was present for duty and in uniform on 18 February 1988. He was in an active duty status on 18 and 19 February 1988.

17. The accused is entitled to military pay, points and per diem pay for active duty performed on 18—19 February 1988, but has voluntarily chosen to forego applying for those entitlements.

18. The accused was apprehended on 18 February 1988 at McChord Air Force Base, Washington, while he was in an active duty status.

19. The accused has been in a continuous active duty status since the time of his apprehension, and is subject to military jurisdiction.

20. Colonel Wallace W. Whaley, Vice Commander of the 446th Air Base Group, Air Force Reserve, McChord Air Force Base, Washington, in the proper exercise of authority, ordered that the accused be continued on active duty for disciplinary purposes under the Uniform Code of Military Justice, by extending Reserve Order No. D–4345, dated 18 February 1988, without a break in service.

21. *Two separate continuation orders were prepared and authenticated, both under Reserve Order No. D–4348, dated 18 February 1988.* Both orders contained the language required by applicable regulation and are valid and lawful orders. Neither order was revoked, altered or amended. The fact that they both have the same reserve order number, contain a different fund cite, and that one contains surplus language, does not affect the validity and lawfulness of the orders.

22. Colonel Wallace W. Whaley, in the proper exercise of his authority, verbally ordered the accused on continued active duty and presented him with the written continuation orders on 18 and 19 February 1988, respectively.

23. The accused has regularly requested per diem pay advances based upon the authority of Reserve Order No. D–4348, dated 18 February 1988, one of two continuation orders.

24. The accused is subject to military jurisdiction.

Now, in conclusion, it was on 18 February 1988, while on active duty, that Lieutenant Colonel Ernest was apprehended, and that apprehension constituted action with a view to trial. See, Rule for Court–Martial 202c(2). At that moment court-martial jurisdiction attached. And pursuant to Rule for Court–Martial 202c(1), once court-martial jurisdiction attached, jurisdiction continued for all purposes of trial, sentence and punishment, notwithstanding any expiration of Lt. Col. Ernest's period of service in which he was subject to the Code or trial by court-martial. Irregularity of, or even the absence of administrative continuation orders could not defeat this criminal jurisdiction, although, as I have found, such orders in this case were valid. The accused is, therefore, subject to court-martial jurisdiction.

(Emphasis added.)

The Court of Military Review, relying on these findings, rejected appellant's lack-of-in-personam-jurisdiction argument. It said in part:

From the evidence presented at trial, there is no question that appellant's unit failed to follow Air Force directives in bringing him onto active duty on these three occasions.* Due to a shortage of administrative personnel, squadron policy regarding applications for active duty training or tours by reservists was to short cut regulatory procedures for com-

pletion of the "COMMAND APPROVAL" section of the AF Form 1289. As a result, blocks covering approval/disapproval, reporting and departing times, training or school status and travel reimbursement were not completed. Additionally, the unit routinely brought reservists onto active duty status with verbal orders of the commander which were later confirmed by written orders (AF Form 938), a practice discouraged by applicable directives. Notwithstanding these regulatory deficiencies, squadron procedures ensured that dates and times of active duty service were clearly defined either verbally or from the AF Form 1289, specified duties were approved prior to active duty being performed and disapprovals of tour requests were transmitted telephonically when necessary. Military pay, per diem and travel pay, as well as reserve credit for active duty tours, were confirmed in the reserve orders covering each period of active duty service. In short, reserve personnel knew when and where to report for active duty tours, and they received appropriate credit under the reserve system.

The footnote * read:

> Air Force Regulation 35–41,....Assignments Within The Reserve Components, Chapter 6 (Apr.1985); AFR 10–7, Administrative Orders, para. 1–15 (Sep. 86); see generally Air Force Reserve Regulation 50–4 (Apr. 85) regarding a commander's authority to delegate manday approval authority for reservists.

### I

Appellant initially questions the lawfulness of the orders given by his command which purportedly "continued [him] on active duty" on February 18, 1988, "for disciplinary purposes under the UCMJ." (Reserve Order No. D–4348, two versions). He contends that, absent valid orders accomplishing a continuation of his active-duty service, his court-martial had no jurisdiction over his person. No authority is cited for this argument.

 We note that it is well established that court-martial jurisdiction continues once attached even if a servicemember's orders to active duty have expired. See United States v. Caputo, 18 MJ 259, 263 (CMA 1984), citing United States v. Self, 13 MJ 132 (CMA 1982). See generally RCM 202(c)(1), Manual for Courts–Martial, United States, 1984.[1] Here, the military judge found that appellant was apprehended on February 18, 1988, while on active duty and substantial evidence of record supports his finding that an apprehension occurred. Apprehension is well recognized as a form of action taken with a view toward trial and one by which court-martial jurisdiction is attached. See United States v. Wheeley, 6 MJ 220, 222 (CMA 1979); United States v. Hudson, 5 MJ 413 (CMA 1978); cf. United States v. Meadows, 13 MJ 165 (CMA 1982). See generally

---

1. (c) Attachment of jurisdiction over the person. (1) In general. Court-martial jurisdiction attaches over a person when action with a view to trial of that person is taken. Once court-martial jurisdiction over a person attaches, such jurisdiction shall continue for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service or other period in which that person was subject to the code or trial by court-martial. When jurisdiction attaches over a servicemember on active duty, that servicemember may be held on active duty over objection pending disposition of any offense for which held and shall remain subject to the code during the entire period.

DISCUSSION

Court-martial jurisdiction exists to try a person as long as that person occupies a status as a person subject to the code. See also Articles 104 and 106. Thus, a servicemember is subject to court-martial jurisdiction until lawfully discharged or, when the servicemember's term of service has expired, the government fails to act within a reasonable time on objection by the servicemember to continued retention.

Court-martial jurisdiction attaches over a person upon action with a view to trial. Once court-martial jurisdiction attaches, it continues throughout the trial and appellate process, and for purposes of punishment.

If jurisdiction has attached before the effective terminal date of self-executing orders, the person may be held for trial by court-martial beyond the effective terminal date.

RCM 202(c)(2).[2] Accordingly, the validity of the continuation orders is not determinative of the jurisdiction of this court-martial to try appellant.

## II

The second issue in this case presents a more pertinent defense argument. For various reasons, appellant claims that he was not lawfully called to active duty in the first instance (Reserve Order No. D–4345) and, therefore, no jurisdiction existed to try him by court-martial. *See* Art. 2(a)(1); *Woodrick v. Divich*, 24 MJ 147, 150 (CMA 1987). *Cf. United States v. Cline*, 29 MJ at 86. He further suggests that, because he did not accept military pay for February 18 or 19, 1988, court-martial jurisdiction over him cannot be sustained under Article 2(c)(1). Finally, he notes that he was not properly called to active duty for his trial as required by Article 2(d)(1); and, therefore, court martial jurisdiction did not otherwise exist in his case. *See Murphy v. Garrett*, 29 MJ 469 (CMA 1990).

▆ Initially we note that Article 2(a)(1) does not delineate how a person is lawfully called to active duty for purposes of court-martial jurisdiction. However, the Court of Military Review in this case did conclude that "there is no question that appellant's unit failed to follow Air Force directives in bringing him onto active service on these three occasions." 30 MJ at 508. Nevertheless, appellant's activation on February 18, 1988, was purely voluntary. Moreover, the record evidences his repeated failures to protest his command's irregular activation process prior to, during, or immediately after any of his entrances on active duty. Finally, his post-apprehension failure to complete pay processing for the voluntarily requested, paid duty of February 18 and 19, 1988, was somewhat belated. In these circumstances, we are inclined to find waiver of his objections to jurisdiction. *See United States v. Barraza*, 5 MJ at 235.

▆ In addition, we agree with the Air Force Court of Military Review that Article 2(c) is adequate to confer jurisdiction under the facts of this case. That codal provision states:

> (c) Notwithstanding any other provision of law, a person serving with an armed force who—
>
> (1) submitted voluntarily to military authority;
>
> (2) met the mental competence and minimum age qualifications of sections 504 and 505 of this title at the time of voluntary submission to military authority;
>
> (3) *received military pay or allowances; and*
>
> (4) performed military duties;
>
> is subject to this chapter until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned.

(Emphasis added.)

Appellant's post-apprehension failure to complete processing for military pay for February 18 and 19 does not necessarily preclude jurisdiction under this statute. The activation of appellant was for the short period of 2 days; he requested this special tour of reserve duty for pay and allowances; and he was eligible to receive such payments by reason of his service under the call-up orders of February 18, 1988. Furthermore, he had requested and received pay for similar irregular activations in January and February 1988. Finally, after his apprehension, appellant did apply for and receive travel and per diem "advances" based on the continuation orders effective February 20, 1988. In our view, appellant's selective effort to exploit the regulatory peculiarities of temporary reserve duty[3] does not obscure the reality of his status as a paid Air Force reservist. *See generally United States v. Jette*, 25 MJ at 19.

---

2. (2) *Procedure.* Actions by which court-martial jurisdiction attaches include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges.

3. In particular, we note the requirement that the reservist complete a "Statement of Tour of Duty" before he is paid for his active-duty service. *See* AF Form 938 (Mar. 86).

In addition, there is no doubt on the record before us that appellant requested orders to active duty and voluntarily reported for active duty on February 18, 1988. It is also clear that he performed military duties until his apprehension on that day. Lastly, it is clear that he was qualified by age and mental competence for duty. Accordingly, we conclude that all the requirements of Article 2(c) were substantially met in this case, so court-martial jurisdiction was properly exercised over appellant as a reservist on active duty. *See also United States v. Cline*, 29 MJ at 84.[4]

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX and Senior Judge EVERETT concur.

---

4. As a result, appellant's argument under Article 2(d)(1), Uniform Code of Military Justice, 10 USC § 802(d)(1), need not be addressed.