UNITED STATES

v.

**Master Sergeant Cedric R. BAKER,
FR217–62–8670, United States
Air Force.**

**ACM31880.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 7 April 1995.

Decided 13 Dec. 1996.

Appellate Counsel for Appellant: Robert A. Parks (argued), Colonel Jay L. Cohen, Colonel David W. Madsen, and Captain W. Craig Mullen.

Appellate Counsel for the United States: Captain Mitchel Neurock (argued), Colonel Theodore J. Fink, and Lieutenant Colonel Michael J. Breslin.

Before HEIMBURG, GAMBOA, and SENANDER, Appellate Military Judges.

## OPINION OF THE COURT

SENANDER, Judge:

The appellant was convicted, contrary to his pleas, by a general court-martial composed of officer members, of wrongful use and possession of cocaine and marijuana. Article 112a, UCMJ, 10 U.S.C. § 912a (1994). His approved sentence is a bad-conduct discharge, confinement for 18 months, and reduction to E–1. The appellant asserts four errors: lack of knowing and voluntary consent to urinalysis; error by the military judge in failing to allow appellant to present polygraph results to support his credibility on a motion *in limine;* factual and legal sufficiency of the second additional charge of use and possession of cocaine; and a violation of the Eighth Amendment by the loss of appellant's retirement as a collateral result of a punitive discharge. We find no error and affirm.

## I. BACKGROUND

Ms. Harris, a commissary employee, sold illegal drugs to undercover security policemen several times. When called in for questioning, she admitted her use and named several military members as customers. Among those named was the appellant, whom she identified by the name "Candy," who drove a black Honda Accord. The Air Force Office of Special Investigations (AFOSI) agents determined there was a "Candy" working in the dental clinic and that he owned a Honda Accord. Ms. Harris later identified a photograph of the appellant as her illegal drug customer.

On August 2, 1994, the appellant was called into the AFOSI office for questioning. After advisement of rights, the appellant agreed to cooperate with the AFOSI as long as they didn't ask him directly if he used illegal drugs. The appellant provided the names of 13 people involved in dealing illegal drugs and said he knew them from two bars in Wrightstown, New Jersey. He described where the drug dealers obtained their drugs in New York City and Philadelphia. He described the amount they purchased on each trip and said they normally took the bus from Ft. Dix. The appellant was even willing to make controlled purchases of drugs for the AFOSI as long as they didn't involve his wife and jeopardize her safety. At the end of the interview, one of the interviewing agents said, "We need to go by the hospital and get a hair and urine sample on you."

## II. CONSENT FOR URINALYSIS

The appellant testified, during a motion to suppress the results of the urinalysis, that he told the agents, "It seems to me like you're trying to make me dig my own grave. I should be able to talk to the Area Defense Counsel." The appellant testified that Special Agent (SA) William McMurry said, "Oh, this is standard procedure. This is something we have to do." According to the appellant, he replied, "You have the weight of the JAG office behind you; I should at least be able to talk to the ADC." The appellant testified that SA Butler then said, "Well, this is standard procedure. This is something we got to do. You really don't have a choice because we're going to get it anyway. It will go a lot better for you if you cooperate." The appellant claimed that he responded, "Well, if it's going to go better for me, okay."

The agents testified in stark contrast to the appellant. SA McMurry testified that he and SA Derrick Butler asked the appellant's commander to arrange for the appellant to meet the agents in the commander's office. The appellant agreed to accompany the agents to the AFOSI office. He was never placed under apprehension. In the interview room SA Butler obtained basic identifying data from the appellant and SA McMurry asked if he knew why he was there. The appellant said he was expecting AFOSI to call him in. At that point SA McMurry advised the appellant of his rights. The appellant indicated he understood his rights and did not want a lawyer at that time. The

appellant was interviewed; during the interview, the agents provided him a 35–minute break during which he was allowed to smoke a cigarette, alone, outside the AFOSI office. After the break SA McMurry told the appellant that they would like to arrange for a hair analysis and urinalysis. SA McMurry showed the appellant the consent form and, in response to questions from the appellant, the agents explained how the Air Force used the test to determine whether drugs were present in a person's hair. SA McMurry testified that the appellant read the consent form and said, "I guess I don't have a choice whether or not to sign this or not."

SA McMurry testified, "I told him that he did have a choice and that, going along the lines of the fact that I had been advising him throughout the interview that it would be much better for him if he was cooperative . . . which he was." SA McMurry testified the appellant did not ask for an attorney and stated that the AFOSI agents made no promises other than to inform his commander and the staff judge advocate of his cooperation. SA McMurry denied telling the appellant they had already received a search authorization or that he didn't have any choice as to whether or not he would consent. The appellant signed the Air Force (AF) Form 1364, Consent for Search and Seizure, after it was explained to him. It took one hour and 40 minutes to arrange for the urinalysis and hair sample at the hospital and during that time the appellant waited at the AFOSI office. While waiting, the appellant made one telephone call to cancel reservations for his planned permanent change of station to Korea. He didn't ask to make any other telephone calls, and he didn't revoke his consent.

The military judge found that the AFOSI was provided information that the appellant extensively used drugs in either February or March 1994, and obtained a search authorization on July 26, 1994, to collect urinalysis and hair samples from the appellant. The search authorization was never used, and the appellant was not told the AFOSI had the authorization. The military judge further found there was no probable cause for the search authorization because of the lengthy time between the last alleged use and issuance of the authorization. The appellant was cooperative and agreed to accompany the AFOSI agents from his commander's office to the AFOSI office and was not placed under apprehension. The appellant was advised of his rights, declined counsel, and agreed to provide information as long as he wasn't directly asked if he used illegal drugs. The appellant was asked if he would consent to provide hair and urine samples. He was shown a consent form. He asked about the test procedure and then read the consent form. The appellant then stated, "I guess I don't have a choice whether or not to sign this." The agents then told him he did have a choice, but that it would look better for him if he consented to the urinalysis and hair analysis. The agents told him that any helpful information he supplied would be provided to the commander and the staff judge advocate. The appellant said he understood the consent form and signed the form. He never asked for an attorney at any point during the interview. The military judge further found the appellant was not credible on key differences with the AFOSI agents.

 The government has the burden of proving by clear and convincing evidence, based on the totality of the circumstances, consent was freely and voluntarily given. *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878–79, 64 L.Ed.2d 497 (1980); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *United States v. Radvansky,* —— M.J. —— (U.S. Armed Forces, Sept. 30, 1996); Mil.R.Evid. 314(e)(5). The military judge's ruling that consent was voluntary should not be disturbed unless it is unsupported by the evidence of record or clearly erroneous. *United States v. Middleton,* 10 M.J. 123 (C.M.A.1981); *United States v. Ernest,* 30 M.J. 506, 508 (A.F.C.M.R.1990), *aff'd.,* 32 M.J. 135 (C.M.A.1991).

 We agree with the military judge that the appellant voluntarily accompanied the AFOSI agents to their office. He was aware of why he was called to the interview. He was told that the AFOSI had a witness statement that he used cocaine. With this information he waived his rights under Article 31,

UCMJ, and agreed to provide information on illegal drug use so long as the agents did not directly ask him if he used cocaine or marijuana. He provided detailed information about where drugs were being sold and the names of 13 dealers. After a lengthy interview and a 35–minute break the appellant signed an AF Form 1364, Consent for Search and Seizure, because he believed that he would be treated better by his commander if he cooperated.

The totality of the circumstances makes it clear that this 39–year–old master sergeant knew what he was doing when he consented to the urinalysis and hair sample. The appellant had 22 years of active duty at the time he was questioned and he consistently demonstrated a cooperative attitude throughout the 4–hour period he was with the AFOSI agents. He was not, as he claimed, given an ultimatum to consent. The appellant's statement best reflects what was going on in his mind when he said, "Well if it's going to go better for me, okay." There was no evidence that the appellant was told that his urine would be seized pursuant to a warrant or the commander would direct the taking of a urine sample. The entire interview was cordial and the appellant appeared calm and aware of his rights. It is clear that the appellant knew of the Area Defense Counsel (ADC), had the opportunity to call the ADC, but did not ask for an attorney or make the call himself when he was using the AFOSI telephone. When we review the circumstances through the six-part test in *United States v. Murphy*, 36 M.J. 732 (A.F.C.M.R. 1992), we find sufficient evidence to conclude the appellant freely and voluntarily consented to the urinalysis.

The evidence supports the military judge's conclusions that the agents did not pressure or coerce the appellant and the appellant's actions were free and voluntary. We concur with the military judge that there is clear and convincing evidence of voluntary consent by the appellant to a search of his body fluids and hair. We conclude the military judge properly denied the motion to suppress the urinalysis results.

## III. POLYGRAPH EVIDENCE

[4] The appellant next asserts the military judge erred when he ruled the appellant could not present polygraph evidence to support his credibility on the motion *in limine*. Trial defense counsel argued that he should be allowed to lay a foundation for the admission of the results of two *ex parte* polygraph examinations. The polygraphs were not exculpatory polygraphs. They were limited to the issue of whether appellant asked for an attorney when questioned by the AFOSI and whether he had a choice in submitting to a urinalysis test. The polygraph results were to be used only to support the appellant's motion to suppress the urinalysis results.

The military judge did not permit the defense counsel to lay a foundation for admission of the polygraph results based on MIL. R.EVID. 707(a) and this Court's ruling in *United States v. Scheffer*, 41 M.J. 683 (A.F.Ct.Crim.App.1995) (*en banc*). In addition, the military judge stated the results of a polygraph test would not assist him as the trier of fact on this issue. The military judge had ample evidence to conclude the appellant consented to the urinalysis as discussed above. The question before us is: Did the military judge violate the appellant's constitutional rights by excluding the polygraph results?

The Court of Appeals for the Armed Forces held in *United States v. Scheffer*, 44 M.J. 442 (1996), that MIL.R.EVID. 707 was unconstitutional to the extent that it required a *per se* exclusion of polygraph evidence, offered by an accused to rebut an attack on his credibility, without giving him an opportunity to lay a foundation under MIL.R.EVID. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The *Scheffer* decision is based on the Sixth Amendment right to present evidence in the accused's defense.

The Sixth Amendment grants an accused "the right to call 'witnesses in his favor.'" *Rock v. Arkansas*, 483 U.S. 44, 52 [107 S.Ct. 2704, 2709–10, 97 L.Ed.2d 37] (1987). An accused's right to present testimony that is relevant and material may not be denied arbitrarily. *Washington v. Texas*, 388 U.S. 14, 23 [87 S.Ct. 1920, 1925, 18

L.Ed.2d 1019] (1967); *see also United States v. Woolheater*, 40 M.J. 170, 173 (C.M.A.1994).

*United States v. Scheffer*, 44 M.J. at 445.

This case, unlike *Scheffer*, does not involve an exculpatory polygraph or limiting of the appellant's Sixth Amendment rights. The appellant did not testify as to his guilt or innocence, but solely on the question of whether he consented to the chemical test. There was no attack on the appellant's credibility. We are unaware of any case law that establishes a constitutional right to present evidence, out of the presence of the members, solely to support a preliminary ruling. The appellant had no constitutional right to lay a foundation for the admission of polygraph evidence in support of a preliminary motion and the military judge did not err in excluding that evidence.

## IV. FACTUAL AND LEGAL SUFFICIENCY

■ The appellant asserts the evidence is insufficient to sustain his conviction for wrongful use and possession of cocaine between October 1, 1993 and February 28, 1994. Under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1994), this court has the duty to determine the legal and factual sufficiency of the evidence. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

■ A witness may be considered an accomplice if he was culpably involved in the commission of the offense with the accused. Testimony by an accomplice cannot, without corroboration, support a conviction of an accused if that testimony is self-contradictory, uncertain, improbable or implausible. *United States v. Rehberg*, 15 M.J. 691 (A.F.C.M.R.), *pet. denied*, 16 M.J. 185 (1983).

Mr. Jones and Ms. Harris both testified that they each sold cocaine to the appellant and that he used it in their presence. They were able to identify the appellant at trial and described specifically several different sales between October 1993 and February 1994. The sales took place at an off-base apartment and at two bars in Wrightstown. On one occasion Mr. Jones brought the appellant to Ms. Harris' home where she sold cocaine to him in her driveway. Although both witnesses were drug dealers, the only inconsistencies in their testimony were minor. Their testimony was certain, not improbable, and given the totality of the testimony, believable.

The statement of the appellant to SA McMurry was consistent with the testimony of Ms. Harris and Mr. Jones. The appellant named the drug dealers and explained where he saw them and the quantities of cocaine normally sold. These facts coincide with the testimony of both Ms. Harris and Mr. Jones and lend credence to their testimony.

We find the court had sufficient evidence to conclude that the appellant possessed and used cocaine during the period charged. The testimony of the two witnesses was in itself sufficient and the appellant's admissions removed any question. Moreover, we are convinced the members followed the military judge's instructions concerning accomplice testimony and properly considered the evidence. We ourselves are convinced the appellant is guilty beyond a reasonable doubt of the Second Additional Charge and its specifications.

## V. CRUEL AND UNUSUAL PUNISHMENT

■ The appellant asserts his sentence to a bad-conduct discharge constitutes cruel and unusual punishment under the Eighth Amendment. This assertion has no merit. *United States v. Sumrall*, — M.J. — (U.S. Armed Forces, Sept. 30, 1996).

## VI. CONCLUSION

We conclude that the findings and the sentence are correct in law and fact, the sentence is not inappropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge HEIMBURG and Judge GAMBOA concur.