**UNITED STATES**

v.

**Lieutenant Colonel Patricia C. PHILLIPS, United States Air Force.**

**ACM 34147.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 1 May 2000.

Decided 23 April 2002.

Appellate Counsel for Appellant: Lieutenant Colonel Brandon Burnett (argued), Colonel James R. Wise, Lieutenant Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Kyle Jacobson.

Appellate Counsel for the United States: Lieutenant Colonel William B. Smith (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Major Mitchel Neurock.

Before SCHLEGEL, ROBERTS and PECINOVSKY, Appellate Military Judges.

## OPINION OF THE COURT

ROBERTS, Judge:

The appellant, a reservist, was convicted, pursuant to her pleas, of making a false official statement, wrongfully using marijuana, and conduct unbecoming an officer by wrongfully and dishonorably soliciting a junior officer to provide a urine sample for her (the appellant) to submit as her own, in violation of Articles 107, 112a, and 133, UCMJ, 10 U.S.C. §§ 907, 912a, 933. The approved sentence includes a dismissal and confinement for 45 days. The appellant avers on appeal that the court-martial lacked in personam jurisdiction over her wrongful use of marijuana, because she used it on the travel day prior to the start of her two-week active duty tour. We disagree and affirm.

## FACTUAL BACKGROUND

The appellant was a reserve nurse, Individual Mobilization Augmentee, attached to the 74th Medical Group, Wright–Patterson Air Force Base (AFB), Ohio. She had 10 years' experience in the reserves, which included duty in Saudi Arabia during Operation Desert Storm. In her civilian capacity, the appellant worked as an operating room nurse in Pittsburgh, Pennsylvania.

The appellant was ordered to perform her annual, two-week tour pursuant to Reserve Order JA 17747, dated 24 June 1999. The order directed her to report for duty at 0730 on 12 July 1999 and released her from duty on 23 July 1999. The orders authorized one travel day for her to get to her duty station

at Wright–Patterson AFB. The appellant left Pittsburgh at approximately noon on 11 July 1999 and checked into government quarters at Wright–Patterson AFB at approximately 1630. She stayed in government quarters that evening and throughout her tour. According to the appellant, that evening she ate three brownies containing marijuana that she brought to Wright–Patterson AFB. She admitted to baking the brownies before leaving Pittsburgh.

On 16 July, the appellant was selected for random urinalysis testing. She reported for the urinalysis test and went into a bathroom with a urine collection container. While in the bathroom, she ran into Second Lieutenant (2Lt) Nance, a nurse who had just finished Officer Training School. The appellant asked 2Lt Nance to provide a urine sample for her, but 2Lt Nance was unable to do so. The appellant insisted, but 2Lt Nance refused to help her. The appellant eventually provided her own sample, which tested positive for marijuana.

During her next reserve tour, on 16 September 1999, a two-day, inactive duty training (IDT) tour, Air Force Office of Special Investigations (AFOSI) special agents questioned the appellant about her marijuana use. After proper rights advisement, which the appellant waived, she gave a sworn statement in which she stated that she had a party in her home on 10 July and that a guest brought brownies containing marijuana to the party. The appellant later admitted that this was a false statement and that she was the one who made the brownies and brought them with her to Wright–Patterson AFB.

## ANALYSIS

■ The appellant claims that the Air Force did not have in personam jurisdiction over her use of marijuana because her active duty tour did not begin until 0001 hours, 12 July. The question of in personam jurisdiction is one of law that we review de novo. *United States v. Melanson*, 53 M.J. 1, 2 (2000).

Articles 2(a) and (c), UCMJ, 10 U.S.C. § 802(a), (c) are the primary statutory provisions authorizing jurisdiction over reservists in the Ready Reserve. *Willenbring v. Neurauter*, 48 M.J. 152, 159 (1998). Congress first enacted Articles 2(a) and (c) in 1950. *Id.* Congress expanded jurisdiction over reserve personnel in the National Defense Authorization Act for Fiscal Year 1987, Pub.L. No. 99–661, § 804, 100 Stat. 3906–07 (1986). Those changes reflected a congressional intent to "conform the UCMJ to the total-force policy by subjecting members of the reserve components in Federal status to the same disciplinary standards as their regular component counterparts." *Willenbring*, 48 M.J. at 169 (citing S.Rep. No. 718, 99th Cong.2d Sess., 225 (1986), U.S.Code Cong. & Admin.News 1986, pp. 6413, 6420). Prior to the 1986 changes, UCMJ jurisdiction did not extend to cases in which a reservist committed a violation of the UCMJ and completed a specific period of duty before disciplinary action under the UCMJ could be taken. *See Duncan v. Usher*, 23 M.J. 29 (C.M.A.1986); *United States v. Caputo*, 18 M.J. 259 (C.M.A. 1984); *United States v. Dale*, 23 M.J. 598 (A.F.C.M.R.1986). We review these provisions in turn.

### Article 2(a)

■ Article 2(a)(1) extends UCMJ jurisdiction over "persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it."

We find that the appellant was subject to UCMJ jurisdiction on 11 July under Article 2(a)(1), because she was a person "lawfully called or ordered into ... duty in or for training ... from the dates when [she was] required by the terms of the call or order to obey it." Art. 2(a)(1), UCMJ. She was called to active duty, pursuant to 10 U.S.C. § 10147(a)(1), in order to fulfill the requirement that members of the Ready Reserve "serve on active duty for training of not less than 14 days (exclusive of travel time) during each year." But, her orders provided her a choice. She could have been called to duty on the date she was required to start her training, 12 July, or she could have exercised her option to take a day of travel and be called to duty on 11 July. The appellant chose the latter option.

Citing 10 U.S.C. § 10147(a)(1), Judge Pecinovsky insists that the Air Force did not have jurisdiction over the appellant. That statute provides that members of the Ready Reserve are required to "serve on active duty for training of not less than 14 days (exclusive of travel time) during each year." Judge Pecinovsky opines that because the statute excludes travel time from active duty, an offense committed during travel must be non-active duty time. We disagree.

The statute, 10 U.S.C. § 10147(a)(1), does not provide a basis for jurisdiction. It does not dictate that travel time is not or cannot be active duty time. It merely establishes a training requirement for members of the Ready Reserve. Congress requires members of the Ready Reserve to perform a minimum of 14 days of annual training a year, but excludes travel days from fulfilling any of that training requirement. We find nothing that suggests Congress intended this training requirement to limit UCMJ jurisdiction over a reservist to only those 14 training days. Congress did not grant reservists a blanket exemption from UCMJ jurisdiction during travel days.

Judge Pecinovsky also concludes that we are adopting a "departure for duty" as the "touchstone" for determining when a reservist becomes subject to UCMJ jurisdiction. We are well aware that our superior court specifically rejected this "departure for duty" standard in *United States v. Cline*, 29 M.J. 83, 85 (C.M.A.1985). We are not adopting a "departure for duty" test for jurisdiction.

In *Cline*, the accused had orders that required him to report at 0500 on 25 April. On 5 April, the accused was told that the reporting time had changed from 0500 to 1600, but was warned that he would be subject to UCMJ jurisdiction one minute past midnight on 25 April. *Id.* at 84. Cline was convicted of committing an offense at 0830, 25 April. He claimed the Air Force had no jurisdiction over him because he did not depart his off base residence to meet the 1600 reporting time until 1535. Our superior court held that, under Article 2(a)(1), UCMJ, Cline was subject to court-martial jurisdiction at 0001 on the date he was called for active duty training.

We are convinced that the orders and the appellant's actions establish jurisdiction under Article 2(a)(1), UCMJ.

### Article 2(c)

■ We also find that the appellant was subject to UCMJ jurisdiction under the provisions of Article 2(c), UCMJ. Article 2(c) extends jurisdiction to persons serving with an armed force who:

(1) submitted voluntarily to military authority;

(2) met the mental competence and minimum age qualifications . . . at the time of voluntary submission to military authority;

(3) received military pay or allowances; and

(4) performed military duties.

The facts of this case are clear that the appellant voluntarily submitted to military authority. Art. 2(c)(1), UCMJ. She accepted the military conditions of her travel and the direction to use government quarters, if available, as stated on her orders. The orders specifically authorized, *but did not require,* a travel day from the appellant's home in Pittsburgh, Pennsylvania, to Wright–Patterson AFB. The appellant had the option of traveling to the base on 11 July and simply filing for mileage. She also had the option of driving from her home to Wright–Patterson AFB on 12 July, the day her 12 days of training began. However, the appellant elected a third option, which was accepting the authorized travel day, and, as we discuss in more detail below, she elected to file for and receive the normal travel reimbursements, as well as active duty pay and allowances for that day of travel. In completing her orders, at the end of her tour, the appellant specifically noted that her tour of duty began on 11 July.

The evidence is undisputed that the appellant met the mental competence and minimum age requirement to serve on active duty. Art. 2(c)(2), UCMJ.

The appellant accepted the authorized travel day, and applied for and received full military pay and allowances for that day. This included base pay, basic allowance for quarters, and basic allowance for subsistence,

as well as reimbursement for the government quarters and travel expenses. Perhaps even more significantly, she received one reserve point for the travel day, which would have eventually increased her retirement pay. Art. 2(c)(3), UCMJ.

Finally, the appellant performed military duties on the travel day. Art. 2(c)(4). When she accepted the optional travel day, she voluntarily undertook a duty to travel from her home to Wright–Patterson AFB. Travel is a normal part of military duty. In the discharge of that duty, it was incumbent upon the appellant to adhere to military standards and to the UCMJ. Few could question that "[p]hysical and mental fitness are the quintessential requirements of military readiness. The use of illegal drugs significantly diminishes the user's physical and mental capabilities." *United States v. Jackson,* 48 M.J. 292, 295 (1998). Military readiness requires military members, reserve and active duty, to refrain from the use of illegal drugs at all times.

The appellant admitted in a written statement to AFOSI agents that she ate five brownies on the evening of 10 July, at her home, and three more brownies on the evening of 11 July in Wright–Patterson AFB officer quarters "before reporting to duty the next day, on Monday July 12, 1999, at WPMC [Wright–Patterson Medical Center]." She also admitted that she knew the brownies contained a "large amount of illegal substance (marijuana)." As to the probable effect of her marijuana use, the appellant wrote, "I do still enjoy the effects of the use and I know after years of this [marijuana use] *the accumulation of THC would be high in urine.*" (Emphasis added). Even though the parties stipulated that the appellant performed her duties on 12 July without incident, common sense and the appellant's own admissions establish that she knew high amounts of THC would be present in her urine that morning.

## CONCLUSION

The "critical issue" is one of the appellant's status. The Supreme Court recognized that military jurisdiction exists over a service member for crimes committed on or off base

as a result of the individual's status as a member of the armed forces. *Id.* (citing *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)). By applying the language of Article 2(a)(1) and the four criteria of Article 2(c) in a common sense and straightforward manner, consistent with plainly stated congressional intent to subject reservists to UCMJ jurisdiction to the same extent as active duty members, the appellant's status made her subject to the UCMJ on 11 July 1999.

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). Accordingly, the approved findings and sentence are

AFFIRMED.

PECINOVSKY, Judge (concurring in part, dissenting in part):

I respectfully dissent from the majority opinion's holding that the court-martial had in personam jurisdiction over the appellant's wrongful use of marijuana, and would set aside the finding of guilty on that specification and charge. However, because the appellant's approved sentenced was for only 45 days' confinement and a dismissal for the more grievous offenses of making a false official statement to AFOSI special agents and dishonorably soliciting a junior officer to substitute her urine for appellant's urine for drug testing purposes, I concur with the majority's affirmance of the appellant's sentence.

The appellant was ordered to active duty to perform her annual training from 12 July 1999 to 23 July 1999. These orders also authorized, but did not require, one additional travel day. The appellant did avail herself of the authorized travel day, and admitted to using marijuana on that day in government quarters at Wright–Patterson AFB on 11 July 1999.

The critical issue is one of status. *Cline,* 29 M.J. at 85. We must look to the statutory language of Article 2, UCMJ, to determine the appellant's status for court-martial juris-

diction purposes. *Id.* The majority is correct in its focus upon the language of Article 2(a)(1) which provides for court-martial jurisdiction over "other persons lawfully called or ordered into, or to duty in or for training in, the armed forces, from the dates when they are required by the terms of the call or order to obey it." Art. 2(a)(1), UCMJ.

The majority holds that based upon the circumstances of this case, the appellant met the requirements of Article 2(a)(1). She availed herself of the authorized travel day, stayed in military quarters, accepted pay, and received one reserve point towards a reserve retirement. However, these circumstances do not meet the statutory requirements of Article 2(a)(1). Jurisdiction under Article 2(a)(1) attaches *"from the dates when* they are required by the terms of the call or order to obey it." *Cline,* 29 M.J. at 85 (emphasis in original). The appellant was called to active duty from 12 July 1999 to 23 July 1999. Although she utilized her travel day, she was not *required* to travel on 11 July 1999. The duty requirement of the annual tour order began at "one minute past midnight" on 12 July 1999. *Id.* at 86. As in *Cline,* the appellant "was subject to the Code and military jurisdiction from that time." *Id.* at 86.

The statutory basis for the appellant's annual tour order is 10 U.S.C. § 10147(a)(1), which provides that members of the Ready Reserve are required to "serve on active duty for training of not less than 14 days (exclusive of travel time) during each year." Travel time, in connection with an annual tour, is not considered active duty service under this provision. Since Article 2(a)(1) contemplates court-martial jurisdiction for periods of active duty, an offense committed during a non-active duty travel day, is therefore, not subject to trial by court-martial.

In *Cline,* the appellant, also a reservist, was ordered to active duty on 25 April 1987. He committed a criminal offense of the wrongful distribution of marijuana at 0830, but did not report in for duty until 1600 on 25 April 1987. His conviction was affirmed because he "was arrested for an offense committed on the day of his activation, not the day before." *Cline,* 29 M.J. at 86. Here, the appellant committed her offense on the day before activation, and court-martial jurisdiction does not attach under Article 2(a)(1).

In the alternative, the majority finds that the appellant voluntarily submitted to military jurisdiction on 11 July 1999 under the provisions of Article 2(c), UCMJ. Then, the majority holds that the requirements of Article 2(c) were substantially met and court-martial jurisdiction was properly exercised. The problem with finding jurisdiction under Article 2(c), is that court-martial jurisdiction is not solely dependent upon voluntary submission to military authority. Article 2(c) confers court-martial jurisdiction for a person serving with an armed force who:

(1) submitted voluntarily to military authority;

(2) met the mental competence and minimum age qualifications ... at the time of voluntary submission to military authority;

(3) received military pay or allowances; and

(4) performed military duties.

*United States v. Ernest,* 32 M.J. 135, 139 (C.M.A.1991). Where are the military duties performed by the appellant on 11 July 1999?

In *Ernest,* the Court concluded that Article 2(c) was adequate to confer jurisdiction "under the facts of this case." *Id.* The Court noted that there was no doubt that the appellant requested orders to active duty and voluntarily reported for active duty on 18 February 1988, the date beginning his active duty, as stated in his orders. *Id.* at 136. The appellant was qualified by age and mental competence for duty, but it was "also clear that he performed military duties" on 18 February 1988. *Id.* Based upon these factors, including the fact that he "performed military duties," the Court determined that the "requirements of Article 2(c) were substantially met in this case." *Id.*

Was the appellant in the present case performing military duties in traveling to Wright–Patterson AFB on her travel day or by checking into billeting? The answer is no. She was not required to travel on her authorized travel day and was not required to check into billeting on that day. She would

not have been subject to prosecution under Article 92, UCMJ, 10 U.S.C. § 892, for dereliction of those "duties." The bottom line is that the appellant performed no military duties on 11 July 1999, subjecting her to court-martial jurisdiction under the constructive enlistment provisions of Article 2(c).

The majority opinion finds a military duty in traveling from her home to Wright–Patterson AFB and in refraining from using illegal drugs. The problem with finding Article 2(c), UCMJ, jurisdiction for these "military duties" is that every reservist has these "duties" at all times. If a reservist, not on active duty orders, commits the federal criminal offense of possession of a controlled substance, in violation of 21 U.S.C. § 844, the commission of this offense does not subject the reservist to UCMJ jurisdiction. It simply subjects the reservist to possible administrative discharge, as well as possible federal prosecution in federal district court. Here, while the appellant did use illegal drugs, the commission of this federal criminal act and the violation of her "military duty" to refrain from committing this act does not subject her to UCMJ jurisdiction. The commission of this offense, while not on active duty orders, simply makes her subject to administrative discharge and prosecution in federal district court.

Similarly, every reservist ordered to perform an annual tour has a "duty" to travel to the duty assignment, whether on the travel day or on the actual duty day. In *Cline*, the reservist committed a criminal act prior to beginning his travel to his duty station.

*Cline*, 29 M.J. at 84. The argument that "departure for duty" is the touchstone for determining UCMJ jurisdiction was rejected by our superior appellate court. *Id.* at 84–85. The majority opinion's crafting of a "military duty" from the appellant's "departure for duty" ignores the clear language in *Cline*, rejecting "departure for duty" as dispositive as to the initiation of UCMJ jurisdiction. Here, as in *Cline*, UCMJ jurisdiction attached "one minute past midnight" on the first duty day of the annual tour order, not when the appellant departed for duty. *Id.* at 86.

Absent jurisdiction under either Article 2(a)(1) or Article 2(c), I would set aside the finding of guilt for the marijuana offense committed on the appellant's travel day. However, while the finding falls, the sentence does not. The appellant's approved sentence was for only 45 days' confinement and a dismissal. She was properly convicted for the more grievous offenses of making a false official statement to AFOSI agents and dishonorably soliciting a junior officer to substitute her urine for the appellant's urine for drug testing purposes. Her sentence was appropriate for these remaining serious offenses and I concur with the majority in affirming the sentence.