**UNITED STATES, Appellee,**

v.

**Keith L. CLINE, Staff Sergeant, U.S. Air Force Reserve, Appellant.**

No. 61,572.
ACM S27577.

U.S. Court of Military Appeals.

Sept. 28, 1989.

Certiorari Denied Jan. 16, 1990.
See 110 S.Ct. 842.

For Appellant: *Captain Bernard E. Doyle, Jr.* (argued); *Colonel Richard F. O'Hair* and *Major Mark R. Bell* (on brief).

For Appellee: *Captain Morris D. Davis* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On June 17, 1987, appellant was tried by a military judge sitting alone as a special court-martial at Norton Air Force Base, California.  Contrary to his pleas, he was

found guilty of wrongful distribution of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. On November 24, 1987, the Court of Military Review ordered a limited hearing on the issue of jurisdiction. After that hearing took place on January 29, 1988, the Court of Military Review affirmed the findings and sentence. 26 MJ 1005 (1988).

This Court granted review of the following issue:

> WHETHER THE COURT–MARTIAL LACKED *IN PERSONAM* JURISDICTION TO TRY THE APPELLANT FOR AN OFFENSE COMMITTED PRIOR TO HIS REPORTING FOR ACTIVE DUTY.

We hold that court-martial jurisdiction existed over appellant because he was a reservist on active duty at the time he committed the charged offense. *See* Art. 2(a)(1), UCMJ, 10 USC § 802(a)(1); *Duncan v. Usher*, 23 MJ 29, 34 (CMA 1986).

The facts of this case are set forth in the opinion below:

> The appellant was a reserve non-commissioned officer who, along with other members of his unit, had been called to active duty for deployment to an overseas location [Kadena Air Base, Japan] for a period of two weeks to satisfy reserve requirements. At approximately 0830 hours on the morning of 25 April 1987, the date he was to report for active duty, the charged offense occurred. He pled not guilty to the charge and defended on the theory of entrapment. The military judge found him guilty as charged.
>
> At trial, as before us, the appellant argues that the military was without [*in*] *personam* jurisdiction to prosecute him for the charged offense, as such offense was committed prior to the appellant's commencing travel to his reporting location to begin his active duty tour. To fully understand the complicated is-

sue before us it is necessary to set forth a factual scenario.

> The AF Form 938, REQUEST AND AUTHORIZATION FOR ACTIVE DUTY TRAINING/ACTIVE DUTY TOUR, is dated 9 March 1987. Since there was no attack on this order there is a presumption that it is valid and proper. Block 11 of this order contains the reporting data. The information contained therein reads "0500 1987 APR 25." The people affected by this order include the appellant. On 5 April 1987, a briefing was conducted for all people being deployed as per the above cited order, including the appellant. Among the items discussed was the itinerary, which changed the reporting time from 0500 hours to 1600 hours on 25 April 1987. *Attendees were informed that they would be subject to the Uniform Code of Military Justice one minute past midnight on the effective date of the orders.*
>
> Because of the change in the reporting hour, the appellant did not leave his off base residence to meet the 1600 hour reporting time at Norton Air Force Base until 1535 hours on 25 April 1987.

26 MJ at 1006–07 (emphasis added).

The evidence of record additionally establishes that the informant for the Office of Special Investigations was instructed not to purchase marijuana from appellant on the night before he was scheduled to begin active duty but to wait until the day of April 25, 1987, to consummate the transaction. Appellant was arrested for the charged offense when he returned from Japan. He was then held on active duty pending court-martial.

-----

Appellant avers that his status as a civilian did not change until he departed his home at 1535 hours to report for active duty at 1600 hours on April 25, 1987. Accordingly, he asserts that his conduct at 0830 hours on that date was not subject to prosecution at a court-martial.

In support of this contention, he argues that Article 2, properly construed, imposes a "departure for duty" touchstone to deter-

mine when a reservist becomes subject to the military jurisdiction. He asserts that his construction of this statute is supported by its legislative history, prior practice with respect to the militia under the Articles of War, case law from other courts, and the existence of special travel pay statutes and regulations for reservists. We disagree.

To the extent that appellant perceives the critical question as one of status, he is correct. In *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), the Supreme Court recognized that military jurisdiction existed over a servicemember for crimes committed on or off post as a result of his status as a member of the armed forces. Status in the armed forces for purposes of court-martial jurisdiction is generally governed by Article 2. *See United States v. Cole*, 24 MJ 18 (CMA), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). *See generally In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890). Accordingly, we must turn to the applicable portions of this statute to determine when appellant's status changed. *United States v. Caputo*, 18 MJ 259, 265 (CMA 1984); *United States v. Handy*, 14 MJ 202 (CMA 1982).

Article 2 states in relevant part:

(a) The following persons are subject to this chapter:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment; *volunteers from the time of* their muster or acceptance into the armed forces; *inductees from the time of* their actual induction into the armed forces; and *other persons* lawfully called or ordered into, or to duty in or for training in, the armed forces, *from the dates when* they are required by the terms of the call or order to obey it.

\*   \*   \*   \*   \*   \*

(3) Members of a reserve component while on inactive-duty training, but in the case of members of the Army *National Guard* of the United States or the Air *National Guard* of the United States *only when in Federal service.*

(Emphasis added.) Clearly, by the express terms of this statute, a precise point of inception of jurisdiction (*i.e.*, "from the time of") exists for "volunteers" and "inductees" under Article 2(a)(1), and for National Guardsmen under Article 2(a)(3) (*i.e.*, "only when in Federal service"). Equally as clear, a different and more general inception point (*i.e.*, "from the dates when") exists for "other persons" listed under Article 2(a)(1). Accordingly, our preliminary task is to determine appellant's proper classification under this statute.

First, we do not find that appellant was a "volunteer" within the meaning of Article 2. A "volunteer" is a person who, for a temporary purpose, fights with the regular military forces. *See* G. Davis, *A Treatise on The Military Law of the United States* 27–27a (1913); W. Winthrop, *Military Law and Precedents* 87 (2d ed. 1920 Reprint). *Cf.* Art. 2(b). Appellant had a pre-established membership in an existing military organization of the United States armed forces, and he held military rank.

Also, appellant was not a civilian involuntarily receiving his initial call to military service. He was a member of the United States Air Force Reserve who was activated for training. Hence, he is not an "inductee" within the meaning of Article 2(a)(1). *Cf. United States v. Ornelas*, 2 USCMA 96, 98–99, 6 CMR 96, 98–99 (1952); Winthrop, *supra* at 87–88.

Moreover, appellant was not a member of the Air National Guard. The Air Force Reserve is a separate organization, established under 10 USC § 261(a)(6). The Air National Guard of the United States is established under 10 USC § 261(a)(5). Pursuant to 10 USC § 261(b), "Except as otherwise provided in this title, no person may be a member of more than one reserve component at the same time." Moreover, appellant has advanced no argument suggesting any kind of dual membership.

Appellant does, however, qualify as an "other person" under Article 2. As defined,

an "other person" is one who is not a member of a regular component, a volunteer, or an inductee. Moreover, he is one who may be "lawfully called or ordered into, or to duty in or for training in, the armed forces." This is precisely what occurred. Appellant was called for active duty training, and he does not challenge the Government's lawful right to do so.

■ As a result of his status, appellant was subject to the Uniform Code of Military Justice and court-martial jurisdiction "from the date[ ]" he was ordered to appear for training. *See* Art. 2(a)(1). Inasmuch as the date of April 25, 1987, began one minute past midnight of April 25, 1987, he was subject to the Code and military jurisdiction from that time. *Cf.* AFM 30–130, Vol. I, Chapter 22, Section B (1986). Accordingly, as he had been previously informed, he was subject to court-martial jurisdiction at the time of his offense, 0830 hours on April 25, 1987. *See Duncan v. Usher, supra; cf. Woodrick v. Divich,* 24 MJ 147, 150 (CMA 1987).

Appellant's arguments to the contrary are unpersuasive. He has cited precatory testimony, made during the House hearings on Article 2, which tends to support a construction of "from the dates" language as imposing a departure-for-duty requirement.[1] We note, however, that this testimony applied to an earlier version of Article 2, which used the same "from the dates" language for inductees and volunteers as well. Yet, the Senate eventually imposed the more particular time requirement for jurisdiction only on inductees, volunteers, and members of the National Guard.[2] Applying the principle of statutory construction, *"expressio unius est exclusio alterius," see generally 2A Sutherland Stat Const* § 47.23–25 (Sands 4th ed. 1984 Revision), members of the Reserves do not gain the benefit Congress intended these other special groups to have. *See United States v. Douse,* 12 MJ 473, 476 (CMA 1982).

■ Appellant's argument that reservists are equivalent to members of the militia who were purportedly subject to a departure-for-duty requirement is equally without merit. Appellant is a member of the Air Force Reserve. *See* 10 USC § 261(a)(6). His military service is of a national character. *See* 10 USC § 262. The militia, on the other hand, primarily serves the needs of the individual states. *See* U.S. Const. amend. II; *cf. United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *see generally* 10 USC § 311. Accordingly, a reservist is not the equivalent of a member of the militia, so prior practice concerning the latter should not control.

Appellant's contention that case law from other sources supports his position is likewise unpersuasive. In one instance, appellant cites a decision of the Comptroller General regarding a deceased National Guardsman. 54 Comp. Gen. 523 (1974). That decision is not controlling, given the distinction made in Article 2 between reservists and National Guardsmen. *Compare* Art. 2(a)(1) *with* Art. 2(a)(3). A second Comptroller General decision also cited is not on point, for it is premised upon a statutory construction of 10 USC § 8721(2), payment of benefits. *See* 44 Comp. Gen. 408 (1965). That decision does not involve construction of Article 2. *See Pearson v. Bloss,* 28 MJ 376 (CMA 1989). Moreover, appellant's reliance on *Vason v. United States,* 369 F.Supp. 1202 (N.D.Ga.1973), *aff'd,* 491 F.2d 1271 (5th Cir.1974), is unwarranted. There, the District Court held that a reserve officer's family was not entitled to benefits when the officer died the day before his active duty date. Here, appellant was arrested for an offense committed on the day of his activation, not the day before.

1. Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm. 81st Cong., 1st Sess. 855 (1949), *reprinted in Index and Legislative History, Uniform Code of Military Justice* (1950).

2. S.Rep. No. 486, 81st Cong., 1st Sess. 4 (1949).

Appellant's final argument is that the existence of certain statutes or regulations covering travel for reservists indicates that a departure-for-duty rule applies for court-martial jurisdiction over them. We decline to adopt appellant's strained extrapolation of these statutes and regulations. Statutes or regulations which authorize travel pay do not themselves measure status. *See Duncan v. Usher*, 23 MJ at 31. In any event, appellant was paid a full day's wage for his service on April 25, 1987. Accordingly, it is immaterial whether his actual reporting time was 0500 hours, as originally planned, or 1600 hours, as actually occurred.[3]

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.

---

3. *See* Matthew 20:12–16.