# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-5612

STEPHANIE L. WATKINS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 8, 2022                                    Decided June 2, 2022)

*Gideon J. Miller*, with whom *Eric C. Gang* was on the brief, both of Hackettstown, New Jersey, for the appellant.

*Omar Yousaf*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and ALLEN, *Judges*.

ALLEN, *Judge*: This appeal presents several interesting and important questions concerning how one assesses when a Reserve member of the Armed Forces qualifies as a "veteran" for the purposes of entitlement to VA disability benefits. Unfortunately, as we will discuss, given errors by the Board of Veterans' Appeals (Board) in rendering the decision on appeal and the fact that appellant's counsel raised certain arguments for the first time before the Court, we can reach only a subset of those issues today. So, we will do what we can to provide clarity in this area given the situation before us.

Appellant Stephanie L. Watkins served the Nation honorably in the U.S. Navy from August 1984 to August 1992,[1] with subsequent service in the Naval Reserve from August 1992 to December 1997, including periods of active duty for training (ACDUTRA).[2] In this appeal, which

---

[1] Record (R.) at 534, 633.

[2] R. at 6. In their respective briefs, both parties cite page 1707 of the record and state that it is appellant's December 4, 1997, Naval Reserve Discharge Memorandum. However, the Secretary indicates that the enclosures noted on page 1707, i.e., appellant's "Record of Discharge," are missing. Supplemental Record at 2. During oral argument, the Secretary confirmed that there are missing records and, as we explain later, this fact is significant and something the Board must address on remand.

is timely and over which the Court has jurisdiction,[3] she contests an April 21, 2020, Board decision that denied service connection for bipolar disorder.[4] This matter was submitted to a panel of the Court to address, among other issues, what "full-time duty in the Armed Forces performed by Reserves for training purposes" and "authorized travel to or from such duty" means under 38 U.S.C. § 101 (22)(A), (E) and 38 C.F.R. § 3.6(c)(1), (6). However, the Board's decision is inadequate and prevents us from addressing the grounds on which it denied appellant's claim. In particular, the Board relied heavily on its assessment that appellant was not on authorized travel at the time her bipolar condition manifested because she had diverted from her "itinerary." As we explain, the Board not only relied on an incomplete evidentiary record, but it also failed to define the term "itinerary." And, even if we leave the definitional point aside, the Board did not explain what it believed appellant's specific "itinerary" was or how it determined appellant's specific "itinerary." Because the Board provided inadequate reasons or bases for its conclusion that appellant was not on ACDUTRA when she was treated for bipolar disorder, judicial review is frustrated, and we will set aside the April 2020 Board decision and remand this matter for further proceedings. We will also take this opportunity to provide additional guidance to the Board concerning arguments appellant raised for the first time on appeal before the Court, arguments that could have an important bearing on the resolution of this appeal when the Board revisits appellant's claim on remand.

## I. FACTS AND PROCEDURAL HISTORY

On April 29, 1997, the Naval and Marine Corps Reserve Center in Little Rock, Arkansas, issued an advance copy of Orders to appellant at her home address in Memphis, Tennessee.[5] Pursuant to these Advance Orders, appellant was directed to report for ACDUTRA at Naval

---

[3] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[4] R. at 5-14.

[5] R. at 250-51. The following language is stamped on the first page of the Orders: "ADVANCE COPY–DO NOT TRAVEL ON THESE ORDERS." *Id.* at 250. We asked the Secretary during oral argument whether there were other copies of any Orders in the record that were not an "advance copy," and he said that the answer was not clear. Oral Argument (OA) at 56:47-57:33 (the Secretary admits that "the record is not clear whether there are any missing records or whether there are additional records."), 1:07-:12:06 (the Secretary reiterates that it was not clear whether there were dispositive records missing), *Watkins v. McDonough*, U.S. Vet. App. No. 20-5612 (oral argument held Mar. 8, 2022), http://www.uscourts.cavc.gov/ oral_arguments.php. As we noted in note 2 above, this fact becomes relevant in our remand guidance to the Board. And while it may appear cumbersome, we will use the phrase "Advance Orders" in this opinion. The reality is we have no final orders in this record and no explanation from the Board about what the stamp on the Advance Orders might mean.

Hospital Pensacola in Pensacola, Florida, no later than 0700 hours on June 2, 1997, for a period of 12 days, "plus 1 travel day."[6] The Advance Orders specified that appellant would be in "duty status for the number of days of AT that is performed plus the time necessary to travel to and from [her] duty station not in excess of the allowable constructive times as prescribed in Joint Travel Regulations [(JTR)]."[7] The Advance Orders also declared that if she required "any justifiable itinerary changes prior to travel," appellant should "contact a COMNAVRESFOR Travel Counselor" at a listed phone number.[8]

On June 2, 1997, appellant was admitted to a civilian hospital in Little Rock, Arkansas, manifesting acute psychotic symptoms.[9] She was discharged on June 12, 1997.[10] The following month, appellant underwent a psychiatric evaluation and was diagnosed with bipolar disorder.

On July 21, 1997, appellant reported to her duty station in Pensacola and was on ACDUTRA until August 1, 1997.[11] The record does not contain copies of any Orders concerning this period of service, and during oral argument, neither party could explain how it came to be that appellant served in this period.[12] In August and September 1997, appellant underwent VA medical examinations that confirmed her bipolar disorder diagnosis.[13] Appellant was ultimately discharged from the Naval Reserve in December 1997.[14]

In September 2012, appellant filed a claim for service connection for bipolar disorder, alleging that she first developed the disorder in June 1997 when she was reporting for ACDUTRA.[15] The RO denied appellant's claim,[16] and she ultimately appealed the decision to the Board.[17] In January 2018, the Board also denied the claim, explaining that it was "impossible for

---

[6] R. at 250.

[7] R. at 251.

[8] *Id.*

[9] R. at 905.

[10] *Id.*

[11] R. at 559-62; *see also* Appellant's Brief (Br.) at 3; Secretary's Br. at 5.

[12] OA at 1:10-:12:06, 1:33:36-:34:12.

[13] R. at 237-40, 275-76.

[14] R. at 1707.

[15] R. at 1164.

[16] R. at 792.

[17] R. at 272.

the Veteran to be on a period of active duty in Florida, as she alleges, at the same time she was being hospitalized in Arkansas."[18] She appealed that decision to the Court.

In July 2019, the Court issued a memorandum decision remanding appellant's claim because the Board had not considered appellant's expressly raised argument that her bipolar disorder manifested while she was on authorized travel to her duty station.[19] On April 21, 2020, the Board issued the decision currently on appeal.

In that decision, the Board addressed appellant's statements that her bipolar disorder began while she was on her way to her duty station. The Board found that "no language in the Orders states or implies that the Veteran was authorized to include Little Rock, Arkansas in her itinerary for authorized travel from Memphis, Tennessee to Pensacola, Florida."[20] The Board explained that appellant failed to obtain an "authorized change in the itinerary set forth in the Orders,"[21] and found that she was "neither in active duty status nor on authorized travel to or from such duty or service at the time of onset of her bipolar disorder on June 2, 1997."[22] Based on this reasoning, the Board denied appellant's claim and this appeal followed.

## II. PARTIES' ARGUMENTS

Appellant first argues that to determine the meaning of "full time duty in the Armed Forces performed by Reserves for training purposes," as contemplated by section 101(22)(A) and 38 C.F.R. § 3.6(c)(1), we must look to *United States v. Cline*, 29 M.J. 83 (C.M.A. 1989). In that decision, what is now the United States Court of Appeals for the Armed Forces (CAAF) held that a Reserve member is on duty 1 minute past midnight on the day the Reserve member is ordered to appear for training, and therefore at that time subject to the terms of the Uniform Code of Military Justice (UCMJ), even if the reporting time is not until later in the day. Regardless of whether she was on authorized travel when her condition manifested, appellant asserts that the Board is bound by *Cline*, or at least, it should have discussed that decision when considering her duty status.

---

[18] R. at 210.

[19] R. at 102.

[20] R. at 11. Note that the Board used the word "Orders" without discussing that the record contains only the document stamped as an advance copy. We will discuss this issue further below.

[21] *Id.*; *see also* R. at 13 ("She failed to obtain authorization for an itinerary change to Arkansas

[22] R. at 13.

4

Next, appellant argues that if *Cline* does not control, then basic principles of statutory and regulatory interpretation reflect that she was on "authorized travel" or a necessary detour en route to her duty station when her condition manifested. She relies on the Department of Defense's (DoD's) definition of "authorized travel," which includes whole days. She argues that the Board provided inadequate reasons or bases for determining that she was not on authorized travel at the time her condition manifested, because the Board ignored 38 U.S.C. § 101 (22)(E) and 38 C.F.R. § 3.6 (c)(6).

Finally, appellant raises a due process argument, asserting that the Naval Reserve's authorization of a single travel day lulled her into believing that she could travel to (for example) Little Rock on the way to Pensacola.[23] She explains that she was not informed or notified to proceed directly to and from her home to her duty station, and such misleading notice lead her to fail to comply with the Advance Orders and deprived her of VA disability compensation, a protected property interest.

The Secretary argues that we should decline to address appellant's first and third arguments because she raises them for the first time on appeal before us.[24] To the extent we address those arguments, the Secretary asserts that the CAAF's decision in *Cline* is not binding on VA and is not relevant to the question the Board addressed. He also asserts that appellant's Advance Orders (though he does not acknowledge that the document is stamped as an advance copy) were clear and whatever uncertainty might exist in those Advance Orders does not amount to a constitutional due process violation. Turning to the travel-related issue the Board addressed, the Secretary asserts that the Board did not err when it found that appellant's bipolar disorder did not manifest while she was on her way to her duty station in Pensacola. The Secretary maintains that the Board was correct that because appellant did not seek authorization for her travel to Little Rock, she was not in duty status when her condition manifested. The Secretary also attempts to explain that 38 C.F.R. § 3.6 (e) required appellant to proceed *directly* to her duty station, even though he acknowledges that the Board did not discuss this regulatory provision. Nevertheless, he argues that a remand for the Board to discuss this regulation would be futile because there is only one way to view appellant's actions in deviating from her Advance Orders, namely that the claim must fail.

---

[23] Appellant's Br. at 27.

[24] Secretary's Br. at 12 n.2.

5

In her reply brief, appellant reiterates her original arguments and cites VA General Counsel precedential opinion 12-91 discussing "travel status" for Reservists under section 106(d).[25] She also discusses the DoD's JTRs and explains that they provide that a service member is encouraged to take the least expensive route when traveling to duty. But those JTRs don't prohibit service members from taking circuitous routes; they simply do not allow reimbursement for this type of travel.[26] Because the JTRs were specifically cited in her ACDUTRA Advance Orders, she asserts that the Board should have discussed them in its decision.[27]

### III. ANALYSIS

The general contours of the law are clear. Establishing service connection generally requires evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability.[28] "When a claim for service connection is based on a period of [ACDUTRA], there must be evidence that the individual concerned became disabled as a result of a disease or injury incurred or aggravated in the line of duty during the period of [ACDUTRA]."[29] In the absence of evidence of a disability incurred or aggravated during ACDUTRA, the period "would not qualify as 'active military, naval, or air service,' and the claimant would not achieve veteran status."[30] ACDUTRA means "full-time duty in the Armed Forces performed by Reserves for training purposes," and "authorized travel to or from such duty."[31]

The Court reviews the Board's findings regarding service connection for clear error.[32] The Court will overturn the Board's finding only if the record offers no plausible basis for the Board's

---

[25] Reply Br. at 1-2 (citing VA. Gen. Coun. Prec. 12-91 (Mar. 11, 1991)).

[26] Appellant's Br. at 21 (citing Def. Travel Mgmt. Off., JOINT TRAVEL REGULATIONS (JTR), ch. 1, General Policy, sec. 0101, Basic Travel Rules, para. 010103, Traveler Responsibilities, https://www.defensetravel.dod.mil/site/pdcFiles.cfm?dir=/Travel_Regulations/ (Apr. 1, 2020)).

[27] *Id.*

[28] *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

[29] *Acciola v. Peake*, 22 Vet.App. 320, 324 (2008) (citing 38 U.S.C. §§ 101(2), (22), (24), 1110).

[30] *Id.* (quoting 38 U.S.C. § 101(24)).

[31] 38 U.S.C. § 101(22)(A), (E); 38 C.F.R. § 3.6 (b).

[32] *Dyment v. West*, 13 Vet.App. 141, 144 (1999).

decision and the Court is left with a definite conviction that the Board's decision was in error.[33] And finally, for all its findings on a material issue of fact and law, the Board must support its decision with an adequate statement of reasons or bases that enables a claimant to understand the precise bases for the Board's decision and facilitates review in this Court.[34]

As we noted, appellant raised three arguments on appeal. Her first argument concerns the extent to which VA is bound by—or must consider—decisions from the CAAF that are potentially relevant to issues before the Board. Her second argument concerns whether any deviation from her purported "itinerary" in her Advance Orders affected her veteran status. And her third argument focuses on whether the Advance Orders she traveled on were constitutionally deficient because they did not adequately notify her about any travel restrictions.

The Secretary argues that we should not address appellant's first and third arguments because she did not present them to VA. When the Court is presented with an argument newly raised on appeal over which we have jurisdiction, we have discretion to hear the argument, to decline to address it, or to remand the matter as appropriate.[35] Exercising this discretion entails a case-by-case analysis that weighs appellant's interests against the "institutional interests the doctrine exists to service."[36] The law continues to recognize the longstanding "importance of issue exhaustion with respect to administrative tribunals" because "'orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.'"[37]

Because the Board's statement of reasons or bases is inadequate with respect to denying appellant's claim on travel-related grounds, the Court will use its discretion and decline to resolve

---

[33] *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

[34] 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57.

[35] *Maggitt v. West*, 202 F.3d 1370, 1377-89 (Fed. Cir. 2000); *see also* 38 U.S.C. § 7252(a).

[36] *Maggitt*, 202 F.3d at 1377.

[37] *Scott v. McDonald*, 789 F.3d 1375, 1377 (Fed. Cir. 2015) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).

the remaining issues appellant raises for the first time here.[38] Appellant will have the opportunity to raise those issues before the Board on remand, and if she does, the Board must address them.[39]

### A. The Board's statement of reasons or bases is inadequate.

There is no question involving issue exhaustion about appellant's travel-related argument, and the parties agree that the travel issue was squarely before the Board. So, we will focus our discussion on that matter. In this case, based on the legal theory the Board adjudicated, service connection depends on whether appellant was deemed to have been on "authorized travel" to her duty station when she was treated for bipolar disorder in Little Rock on June 2, 1997.[40] As we will explain, the Board's denial of appellant's claim based on its assessment that appellant deviated from her travel itinerary as reflected in her Advance Orders is inadequate for multiple reasons.

First, the Board does not explain how it determined that appellant's Advance Orders required her to follow a specific itinerary. Recall that appellant's Advance Orders directed her to report for ACDUTRA at the Naval Hospital Pensacola, Florida, no later than 0700 hours on June 2, 1997, for a period of 12 days, "plus 1 travel day."[41] Moreover, the Advance Orders state that appellant would "be in a duty status for the number of days of [training] that is performed plus the time necessary to travel to and from your duty station not in excess of the allowable constructive times as prescribed in [JTRs]."[42] There is nothing in the Advance Orders that provides a route appellant was required to follow or destinations that were off-limits. Because there is nothing in the Advance Orders to suggest that the Naval Reserve required appellant to follow a specific route to reach Pensacola, the basis of the Board's decision is questionable at best.

---

[38] We note that appellant's current counsel has been her representative since at least May 2018, when appellant appealed to the Court the first time. Appellant made no mention of *Cline* or any due process error in that appeal.[38] Nor did she bring these issues to the Board's attention. Counsel should be well aware that it is inappropriate to deprive the Agency of the opportunity to consider arguments in the first instance. Appellant has not been harmed by the failure to raise these arguments before the Agency because we are remanding on other grounds. But it is critically important that all counsel recognize that it is risky business to raise new arguments on appeal to this Court.

[39] We recognize that recently, in *Carr v. Saul*, 141 S. Ct. 1352 (2021), the Supreme Court addressed issue exhaustion in the context of nonadversarial administrative proceedings before the Social Security Administration. Given our decision to remand this matter and appellant's opportunity to raise her new arguments to the Agency, we need not address any implications of that decision on VA's adjudicatory system today.

[40] There are no available service records that indicate that appellant was deemed to be on ACDUTRA on June 2, 1997. *See* OA at 1:10-:12:06.

[41] R. at 250.

[42] R. at 251.

And the omissions in the Advance Orders are more significant because the Board does not tell us (1) what it understood appellant's "itinerary" to be, and (2) where it gained this understanding. Specifically, as it relates to the facts here, the Board fails to explain why Little Rock was an off-limits destination during appellant's authorized 1 day of travel. The Board offers no specialized definition of "itinerary," and even if we assume that the Board was referring to the common definition of "itinerary," which is a planned route for a trip or journey,[43] the record does not support the conclusion that Little Rock was outside any itinerary. As we have explained, nothing in the Advance Orders mandates a specific route that appellant was required to follow or precludes travel to specific destinations. In other words, the Advance Orders not provide an "itinerary" in the dictionary sense of the term.[44] Additionally, the Board does not acknowledge that the version of appellant's "Orders" contained in the record is an "advance copy," and in turn, fails to explain why it could rely on that version to support its decision. In light of the foregoing, it is difficult for us to accept that the Board determined what appellant's itinerary was from her Advance Orders.

This observation then leads us to the question—if the Board did not determine what appellant's itinerary was through her Advance Orders, did it have some other source? Perhaps there is a VA regulation or DoD rule that gave the Board the information necessary to determine that Little Rock was off-limits. There is no sign that is the case here, but if it is, to facilitate judicial review the Board must do far more to explain its reasoning than it has done here.

There is another possibility. Perhaps the Board looked to nothing to support its conclusion that Little Rock, Arkansas was off-limits for travel. This would mean that the Board decided on its own, years after the fact, how appellant should have traveled during her 1 day of authorized travel, even though the Naval Reserve did not specify a route. If that is the case, the Board

---

[43] "Itinerary" is "the route of a journey or tour or the proposed outline of one." *Itinerary*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/itinerary (last visited Mar. 25, 2022); "Itinerary" is "a detailed plan or route of a trip." *Itinerary*, CAMBRIDGE DICTIONARY ONLINE, https://dictionary.cambridge.org/us/dictionary/english/itinerary (last visited Mar. 25, 2022).

[44] We have often turned to the dictionary to derive the meaning of undefined terms in certain situations. *See Nielson v. Shinseki*, 23 Vet.App. 56, 59 (2009) ("The plain meaning of a term 'begins with its ordinary, contemporary, common meaning,'" and "[i]t is commonplace to consult dictionaries to ascertain a term's ordinary meaning." (citations omitted)), *aff'd*, 607 F.3d 802 (Fed. Cir. 2010). Though not present here, this is especially true in situations involving statutory and regulatory interpretation. *See Ravin v. Wilkie*, 31 Vet.App. 104, 109 (2019) (en banc) (we used the dictionary to define the terms "same work"); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (using a dictionary to define the word "clothes"); *Murakami v. United States*, 398 F.3d 1342, 1351 (Fed. Cir. 2005) (using a dictionary to define the phrase "as a result of").

committed legal error. There is no justification for the Board to craft an "itinerary" for appellant—retrospectively we might add—when the relevant service department did not. We aren't saying that is necessarily what the Board did here, but we simply can't tell. The bottom line is that there is too much about the Board's "itinerary" rationale that leaves us guessing. If the reasons-or-bases requirements means anything, it is that the Board can't make a claimant and this Court guess about its rationale.[45]

Leaving aside the "itinerary" point, there is another defect in the Board's reasoning. As we noted before, appellant's Advance Orders specifically authorized "travel via [privately owned vehicle (POV)]" and "if POV is used," appellant would be reimbursed for costs associated with that travel, in accordance with JTRs.[46] The Advance Orders expressly refer to the JTRs that concern appellant's travel. The Board did not discuss these regulations at all even though the Advance Orders specifically refer to them and the Board's rationale was focused on travel. The failure to discuss the JTRs is not trivial given the Board's reasoning. As appellant points out, the JTRs allow for indirect or circuitous routes at the service member's personal expense.[47] This provision of the JTRs directly affects whether appellant deviated from any "itinerary" that may have been provided. Indeed, they suggest that any deviation related only to reimbursement for expenses and not "veteran" status. But, as we have said, the Board discussed none of this.

In sum, the Board's rationale for denying appellant entitlement to service connection for bipolar disorder based on deviating from her "itinerary" is seriously flawed. Should the Board rely on that ground on remand, it must address the matters we have outlined above.

### B. Guidance to the Board on Remand

As we noted above, appellant raised two arguments before us that she did not present to the Board. We did not address the issues on their merits because we are setting aside the Board decision here for inadequate reasons or bases concerning the travel-related rationale, and we are remanding the case. But per *Quirin v. Shinseki*,[48] the Court will provide additional guidance to the

---

[46] R. at 251; *see* JTR, ch. 2, Standard Travel and Transportation Allowances, sec. 0202, Transportation, para. 020210, Privately Owned Vehicles (POV), https://www.defensetravel.dod.mil/Docs/perdiem/JTR.pdf (Mar. 1, 2022) ("POV" means "privately owned vehicle").

[47] *See* JTR, ch. 5, Permanent Duty Travel, pt. A, Standard PCS Allowances (Service Members), sec. 0502, PDT Transportation, para. 050204, Indirect or Circuitous Travel OCONUS, https://www.defensetravel.dod.mil/Docs/perdiem/JTR.pdf (May 1, 2022).

[48] *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (noting that the Court may provide guidance to the Board after

Board on remand about appellant's "new" arguments on appeal. And we will also provide guidance to the Board concerning the completeness of the record.

First, appellant argued that the Board was either bound by or should have discussed decisions of the CAAF including *Cline*. The first part of appellant's argument is incorrect as a matter of law because decisions of the CAAF are not binding on the Board.[49] However, such decisions can be relevant to issues concerning VA disability benefits under certain circumstances. As appellant asserted in her brief, *Cline* established a bright-line rule for when a service member is deemed to be on ACDUTRA for purposes of being subject to the UCMJ.[50] That rule appears to be one that could be relevant to the Board's determination about whether appellant was in duty status at the time her bipolar condition manifested. After all, if appellant was subject to military discipline under the UCMJ 1 minute past midnight on June 2, 1997, it seems the Board should consider that fact when determining whether appellant was eligible for VA disability benefits at the same time. It would be remarkable if appellant were considered to have been on active duty by the service department for the purpose of imposing discipline, but not considered to have been on active duty by VA for the purpose of awarding benefits, and a thorough discussion of any such conclusion would aid in judicial review. If appellant raises an argument concerning *Cline* or any other CAAF decision on remand, the Board is required to discuss those decisions as part of its duty to provide adequate reasons or bases for all its determinations, which includes providing a justification for adopting a rule for determining appellant's duty status that is different from the one applicable in the context of those CAAF decisions.[51]

Second, appellant argued that her Advance Orders "lulled" her into believing that she could travel to Little Rock during her authorized travel day.[52] Appellant frames her argument on appeal in terms of the Naval Reserve violating her due process rights by issuing the unclear Advance

---

determining that remand is warranted).

[49] *See Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991).

[50] *Cline*, 29 M.J. at 86 (holding that "appellant was subject to the Uniform Code of Military Justice and court-martial jurisdiction 'from the date[]' he was ordered to appear for training . . . [which] began one minute past midnight on April 25, 1987").

[51] *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57; *see also Healey v. McDonough*, 33 Vet.App. 312, 320 (2021) ("Notwithstanding its non-binding nature, an agency cannot simply ignore an internal guidance manual when its contents relate to a particular claim or disability."); *Overton v. Wilkie*, 30 Vet.App. 257, 264 (2018) (holding that, while the Board is not bound by the M21-1, "the Board is required to discuss any relevant provisions contained in the M21-1 as part of its duty to provide adequate reasons or bases.").

[52] Appellant's Br. at 27.

Orders. As we noted, we decline to address this argument at this juncture, but appellant is free to raise it on remand. We note, however, that regardless of whether the Naval Reserve violated appellant's due process rights, as we have explained, the Board must fully explain how it reads appellant's Advance Orders (or the actual Orders should VA obtain them) and how appellant would have understood the meaning the Board assigns to them.[53]

Finally, during oral argument it became clear that the record is incomplete with respect to appellant's service in the Naval Reserve.[54] The record contains only one page from appellant's "RECORD OF DISCHARGE FROM THE U.S. NAVAL RESERVE."[55] We asked for the Secretary to submit the other pages or enclosures noted on that first page of the Record of Discharge to the Court. The Secretary responded that "the enclosures noted in the Record of Discharge . . . do not appear to be in the record."[56] Additionally, when questioned during oral argument, the Secretary admitted that there were missing documents.[57] And as a matter of common sense, there are clearly gaps in the record. For example, the only copy of the Orders contained in the record is one that is stamped "advance copy," which indicates that there is potentially some other copy of appellant's Orders that exists. And as another example, on what basis did appellant report to Pensacola for ACDTURA in July 1997? Neither party was able to explain these discrepancies, as we mentioned above. It is improper for the Board to rely on this clearly incomplete record as evidence, let alone dispositive evidence, that appellant acted in such a manner as to disqualify herself from receiving VA disability benefits. On remand the Board must address the issues concerning the incomplete record, especially concerning appellant's Naval Reserve service. If the Board concludes that VA has taken all steps to obtain these records to no avail, we remind the Board that when records are lost, it has a heightened duty to assist as well as a heightened duty "to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt."[58]

---

[53] *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57.

[54] *See* OA at 56:47-57:33 and 1:10:00-1:12:06.

[55] R. at 1707.

[56] Secretary's Supplemental R. at 2.

[57] *See supra* notes 34, 35.

[58] *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991); *see also Washington v. Nicholson*, 19 Vet.App. 362, 370 (2005) (explaining that when records are presumed lost or destroyed, the Board is under a heightened duty to assist, which includes advising the claimant to submit alternative forms of evidence and assisting the claimant in obtaining that

*C. Appellant's Rights on Remand*

Because the Court is remanding this matter to the Board for readjudication, the Court need not address any remaining arguments now, and appellant can present them to the Board.[59] On remand, appellant may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice.[60] The Board must consider any such additional evidence or argument submitted.[61] The Board must also proceed expeditiously.[62]

## IV. CONCLUSION

After consideration of the parties' briefs, oral argument, the governing law, and the record, the Court SETS ASIDE the April 21, 2020, Board decision and REMANDS the matter for readjudication consistent with this decision.

---

evidence).

[59] *Best v. Principi*, 15 Vet.App. 18, 20 (2001).

[60] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018).

[61] *Kay v. Principi,* 16 Vet.App. 529, 534 (2002).

[62] 38 U.S.C. §§ 5109B, 7112.